RICE *v.* BOSTON PORT AND SEAMAN'S AID SOCIETY. { Dec. 7, 1875.

*Interest on legacy— Construction of will and codicils— Cumulative legacies.*

The rule in this state is, that a pecuniary legacy, payable generally, without designation of any time of payment, is payable at the end of one year from the death of the testator, without interest; and that if not then paid, it bears interest after the expiration of the year.

Considerations which should govern the court in determining whether legacies given in separate testamentary instruments are cumulative or substitutionary, discussed.

A. R., in her will, named the defendants among a number of other benevolent societies to whom she gave $5,000 each, and, in a codicil executed about a year afterwards, named them in another list of other benevolent societies to whom she also gave $5,000 each. *Held* (SMITH, J., dissenting), that, under the circumstances shown at length in the case, the second bequest should be regarded as substitutionary for the first.

FROM ROCKINGHAM CIRCUIT COURT.

IN EQUITY. Arabella Rice, by her will dated May 18, 1867, made bequests as follows:

*First.* To each of her first cousins, paternal and maternal, $12,000.

*Second.* To a first cousin of her father, $6,000.

*Third.* To Eliza Rice, $6,000.

*Fourth.* To her late father's first cousin, Mrs. Edgecombe, and to her daughter, Sarah Edgecombe, $6,000 each.

*Fifth.* To two persons described as her relatives, $6,000 each.

*Sixth.* To Hon. Ichabod Goodwin, $6,000.

*Seventh.* To four charitable societies of Portsmouth, $3,000 each,— namely, Portsmouth Marine Society, Domestic Missionary Society, Howard Benevolent Society, Humane Society,—the income to be applied to purposes of society.

*Eighth.* To the Atheneum in Portsmouth, $3,000,—income to be applied to purchase of books for the library.

*Ninth.* To South Parish in Portsmouth, $3,000, with directions as to application of income.

*Tenth.* $20,000 for establishing free public library in Kittery, Maine, with specific directions as to its use and application.

*Eleventh.* To the trustees of the insane asylum at Concord, $20,000, with directions as to its application.

The *twelfth* item was as follows: "I give and bequeath to the following named charitable societies in Boston, in the county of Suffolk and state of Massachusetts, the sum of five thousand dollars ($5,000) each, to wit: To the Association for the Relief of Aged and Indigent Females, to the Channing Hospital for Sick and Destitute Women, to the Society for the Prevention of Pauperism, to the Seaman's Aid Society, and to the Boston Dispensary: the annual income of each of the said bequests is to be applied by said societies to the purposes to which they are respectively instituted; and the principal of each is to be kept and invested as a permanent fund."

*Thirteenth.* To the Sailor's Snug Harbor, Boston, $20,000,—income only devoted to the purposes of society.

*Fourteenth.* To General Theological Society, Boston, $3,000, with directions as to use.

*Fifteenth.* To her first cousins, the Misses Coffin, her grandmother Martin's bible, a family mourning ring, dated 1748, two silver tankards, and a china tureen with plates to match.

*Sixteenth.* Makes her first cousins her residuary legatees.

*Seventeenth.* Appoints executors.

This will was drawn by Lemuel Shaw, Esq., counsellor-at-law. July 2, 1868, the testatrix being in the room of Lee & Higginson's safety vault in Boston, where she had deposited and kept her will, without the aid of counsel, wrote and executed the following codicil:

" Be it known that I, Arabella Rice, of Portsmouth, do make and declare this to be a first codicil to my last will and testament, dated May 18, 1867:

"*First.* I give and bequeath two thousand dollars ($2,000) more to the fund for the Howard Benevolent Society, and two thousand dollars ($2,000) more to the Domestic Missionary Society, in Portsmouth, in the state of New Hampshire.

"*Second.* I give and bequeath ten thousand dollars ($10,000) more to the fund for a free public library in Kittery, in the state of Maine.

" *Third.* I give and bequeath the sum of five thousand dollars to each of the following societies in Boston, in the state of Massachusetts, viz.: The Harvard Benevolent Society, the Boston Provident Association, Boston Seaman's Aid Society, House for Aged Men, Consumptives' Home, the Massachusetts General Hospital—the five thousand dollars ($5,000) to be appropriated entirely to free beds in the Massachusetts General Hospital."

The bill is brought by the executor, Edwin T. Rice, praying direction of the court as to what sum is bequeathed to the defendants—The Seaman's Aid Society—by the will and codicil, and whether any, and if any, what sum ought to be paid to them as interest.

The cause was heard before the late supreme judicial court, where it was determined, at the August adjourned term, 1874, that the bequest in the codicil was substitutionary and not cumulative; and that the executor should account for interest after one year from the death of the testatrix.

The plaintiff moved for a rehearing upon the question of interest, and therefore the defendants moved for a rehearing upon the construction of the will and codicil, and those motions were heard before this court.

*W. H. Y. Hackett,* for the plaintiff, took the following positions:

I. That when a legacy is given *simpliciter,* and is known to the legatee, the executor is not liable to pay interest till the lapse of the year, and the legacy has been demanded by the legatee.

II. That when a trust is created, and a foreign corporation is nominated as trustee and notified of the trust, the executor is not chargeable with interest until after the corporation has signified to the executor their acceptance of the trust.

III. That the " lawful receipt," which the law requires shall be taken whenever a legacy is paid, means a receipt showing that the

executor has lawfully administered that fund, and in this case means a receipt signed by the trustee who had signified his acceptance of the trust; and this fund, in point of fact, as the case shows, was paid the first day such a receipt could be obtained.

IV. That the executor in this case would not have administered this fund according to law, unless he had left on the files and records of the probate office evidence that he had paid the fund to the trustees who had accepted the trust, to the end that a court of equity, in case of need, might enforce its fulfilment.

V. That from and after the expiration of the year the executor was bound to have this fund on hand in cash, to be paid when the trustee signified his acceptance of the trust. He, of course, was not bound to have the money on hand, and pay interest for it at the same time. Interest is the alternative, not the cumulative obligation. Nor was he bound or authorized to pay to a party who had not qualified itself to receive it.

The trustee does not deny that the fund was paid the day he signified the acceptance of the trust; but admitting this, he claims that the executor, from the expiration of the year, was bound to put and keep this fund on interest till called for, and then to pay the fund and interest to the trustee. This position is obviously incompatible with the universally recognized rule, that the executor is bound to pay the money at the end of the year, and that this rule is fulfilled if he have the money on hand for that purpose. "Where one has received money for the use of another, and it was his duty to pay it over, interest is recoverable for the time of the delay; but if the holder of money for another is guilty of no neglect or delay, he will not be chargeable with interest." *Selleck* v. *French*, 1 Am. Lead. Cas. 610, 611.

When a trustee retained a sum of money in his hands having reasonable grounds for supposing he had a right to do so, although the court decided against his right to retain the money, yet he was not charged with interest, because he acted in good faith. Tiffany & Bullard on Trusts, &c., 599; *Bruce* v. *Pemberton*, 12 Ves. 386.

It is settled, in Massachusetts and in this state, that the executor is to pay interest in only three classes of cases: (1) Where they actually receive interest; (2) where they make some use of the fund; (3) or are guilty of negligence in paying it over. 13 Mass. 232; 1 Pick. 530; 18 Pick. 1–7; 5 N. H. 497; 19 N. H. 213; 21 N. H. 199; 41 N. H. 359.

The executor has received no interest for the $5,000. He has not in any way appropriated this fund to his own use, but constantly had it on hand from the time it became due till it was received by the defendants.

He also cited and commented on *Payne* v. *Smith*, 12 N. H. 37; Roper on Legacies 133; 2 Redf. on Wills (ed. 1870) 181; *Wilson* v. *O'Leary*, Law Rep., 12 Eq. 525; S. C., Law Rep., 7 Ch. Ap. 448; *Duke of St. Albans* v. *Beauclerk*, 2 Atk. 636; *Russell* v. *Dickson*, 4 H. L. C. 293; *Hemming* v. *Clutterbuck*, 1 Bligh N. S. 479; *Benyon* v. *Benyon*,

4 Ves. 31–41; *Allen* v. *Callow*, 3 Ves. 289; *Barclay* v. *Wainwright*, 3 Ves. 462; *Campbell* v. *Randnor*, 1 Brown C. C. 271; *Coote* v. *Boyd*, 2 Brown C. C. 521; *Robley* v. *Robley*, 2 Bev. 95; *Gillespie* v. *Alexander*, 2 Sim. & S. 145; *Kidd* v. *North*, 2 Phil. Ch. 91; *Attorney-General* v. *Harley*, 4 Madd. Ch. 263; *Ridges* v. *Morrison*, 1 Bro. C. C. 389; *Moggridge* v. *Thackwell*, 1 Ves., Jr., 464, 473; 2 Roper 1015, 1016; *id.* 996, 997; Roper on Legacies 134.

*Robert M. Thompson*, of Massachusetts, for the defendants, cited *Ridges* v. *Robinson*, 1 Bro. C. C. 388; *Hooley* v. *Hatton*, 1 Bro. C. C., note to 388; *De Witt* v. *Yates*, 10 Johns. Ch. 156; *Jones* v. *Creveling*, 4 Harr. 127; *Lee* v. *Paine*, 4 Hare 201; *Wilson* v. *O'Leary*, L. R., 12 Eq. 525—S. C. on appeal, L. R., 7 Ch. Ap. 448; Wms. on Exrs. *1106, and cases cited; *Hurst* v. *Beach*, 5 Madd. 351; *Hall* v. *Hill*, 1 Dru. & War. 94; *Gifford* v. *Choate*, 100 Mass. 343; *Spooner* v. *Lovejoy*, 108 Mass. 529; *Stokes* v. *Heron*, 12 Cl. & F. 161, 186; *Sisson* v. *Seabury*, 1 Sum. 235; *Masters* v. *Masters*, 1 P. Wms. 423; *Attorney-General* v. *George*, 8 Sim. 138; *Mackinnon* v. *Peach*, 2 Keen 555.

On the question of interest, he cited *Flintham's Appeal*, 11 S. & R. 16; *Kent* v. *Dunham*, 106 Mass. 586; *Lamb* v. *Smith*, 1 Root 419; *Bourne* v. *Mechan*, 1 Grat. 292; *Churchill* v. *Lady Speake*, 1 Vern.; *Patterson* v. *Nichol*, 6 Watts 379; 2 Redf. on Wills 564, 569; *Eichhold* v. *Greenbaum*, 1 Chicago Legal News 210; *Sullivan* v. *Winthrop*, 1 Sum. 1; *Loring* v. *Woodward*, 41 N. H. 391; *Davies* v. *Swan*, 4 Mass. 208; *Dunscomb* v. *Dunscomb*, 1 Johns. Ch. 508; *Merrick's Estate*, 1 Ash. 309.

LADD, J. At the August adjourned term, 1874, the supreme judicial court decided, not without hesitation, that the legacy of $5,000 to the Boston Seaman's Aid Society in the codicil was not to be regarded as cumulative, but rather as an inadvertent repetition by the testatrix of the legacy of the same amount given to the same society in the will; and that the defendants were therefore entitled to but one sum of $5,000, on a fair construction of the two testamentary papers taken together. The decree ordered was, that the executor should pay to the defendants the sum of $5,000, with interest from one year after the death of the testatrix. The executor moved for a rehearing upon the order as to interest; and thereupon the defendants moved for a rehearing upon the general merits of the bill involving the construction of the will and codicil.

I have carefully reëxamined both points, not unwilling, I hope, to rectify any errors into which I may have fallen as a member of the late court.

As to the matter of interest, this further consideration has only strengthened my conviction that the order was right. The learned counsel for the executor says he claims that the late court erred in treating *Loring* v. *Woodward*, 41 N. H. 391, as overruling *Pickering* v. *Pickering*, 6 N. H. 120, and *Payne* v. *Smith*, 12 N. H. 34. The counsel

is mistaken in supposing the court entertained any such idea.    In *Pickering* v. *Pickering* the general rule is stated that no action can be maintained for a legacy against an executor without showing a demand, though that case was held not to fall within the rule.    In *Payne* v. *Smith* the same point was directly before the court, and was, of course, settled in the same way.    In neither case is there a word said about interest.    In *Loring* v. *Woodward*, Chief Justice BELL states the general rule to be,—If a pecuniary legacy is payable generally, without designation of any time of payment, it is payable at the end of the year from the death of the testator without interest ; but if not then paid, it bears interest after the expiration of the year ;—in support of which he cites a large number of authorities.    The court were satisfied that the general rule was as thus stated by Judge BELL ; and the question was, whether there was anything in this case either to take it out of the rule, or to call for a modification of the rule in its application ;—and the court were clearly and unanimously of opinion that there was not.

Much stress is laid in the argument on the fact that the society did not vote to accept the legacy, and perform the trust upon which it was given.    The only trust was, to keep and invest the principal as a permanent fund, and apply the income to the purposes of their institution. This was neither complicated nor onerous.    The objection was regarded as quite technical, and was thought to be sufficiently answered, if any answer were required, by the equally technical suggestion that the executor did not notify the defendants of the bequest in their favor, but left them to find it out from other sources.    In reality, little importance was probably attached either to the want of a vote by the defendants or the want of notice by the executor.    The probability, that if the executor had been sincerely desirous to pay over the legacy the defendants would have received it and given him ample vouchers for his protection in the probate court, was doubtless the controlling consideration in determining that there was nothing in the facts shown to take the case out of the general rule as to interest.    If at the end of a year there existed a controversy as to the amount the defendants were entitled to receive under the will, no reason is seen why the executor should not have paid the money into court, or placed it where some income might be derived from it.    As trustee, he would hardly be justified in permitting the fund to lie idle for so long a time,—at least, without taking advice from the court ; and if anything has in fact been realized from it, nobody but the legatee has any shadow of right thereto.

It cannot be denied that the main question in the case is extremely troublesome, and one upon which, with the best attention that can be given to it, the court are liable to go wrong.    For this reason I have reëxamined it with much care, and have again looked into all the cases referred to by counsel, as well as many others in which the subject of cumulative legacies is discussed.    The result is, that I am again brought, though certainly not without doubt and hesitation, to the conclusion reached by the court when the case was first considered, namely, that

the testatrix did not intend to give the defendants two sums of $5,000, but only one.

I do not propose at this time to do more than state, in a word, the considerations which have brought my mind to this conclusion, and then inquire whether those considerations are such as might properly and legally be weighed in determining the question presented by the case.

I have looked at the will and codicil together, not, indeed, as one instrument, but as two testamentary instruments made by the testatrix in execution of the same general object,—that is, the disposition of her estate. I have accordingly placed the third item of the codicil by the side of the twelfth item in the will, and have observed and considered the fact that in both these items she has given the same sum of $5,000 to each of eleven different benevolent institutions in the city of Boston; that these institutions, established for a similar purpose and having a kindred object in view, appear to be equally worthy objects of her bounty; that their classification, both in the will and the codicil, affords intrinsic evidence that the mind of the testatrix when she made the codicil was occupied with the intention of adding to the class enumerated in the will, by extending her equal bounty to a number of other institutions which she regarded as equally deserving; that in every other instance where she repeated in the codicil the name of a legatee mentioned in the will she used the word " more." I have examined the whole will and codicil together, and considered the general scheme and method she seems to have adopted in disposing of her estate, and these considerations I have weighed against the fact that in each of two testamentary instruments she has said to the defendants, "I give you $5,000." In my mind, the former considerations have overbalanced the latter; and by this I mean to say, simply, that I find a balance of probability against an intention to double the gift.

If I have mistaken the question to be decided, or if any of the foregoing considerations are not properly to be weighed in determining it, or if it is not to be decided according to the preponderance of probabilities, then my decision may be wrong. But if the question and the mode of deciding it have been rightly apprehended, the correctness of my decision depends upon whether or not too much weight has been given to the considerations bearing in one direction, or too little to those bearing in the other. This involves an inquiry as to clearness of apprehension and soundness of judgment, which, though very proper subjects of comment and criticism, do not come at all within the same category as the application of legal principles, and are not to be rectified in the way that mere mistakes in the law may be retrieved.

What, then, is the question to be determined? I understand it to be, What was the intention of the testatrix as shown by the testamentary papers she has left? That is, What do the will and codicil, read by the light of such circumstances (if any) as may properly be considered to place the court in her position, show her intention to have been? The books are full of declarations to the effect that the first great rule in

the exposition of wills, to which all rules must bend, is, that the intention of the testator expressed in the will shall prevail, provided it is consistent with the rules of law. MARSHALL, C. J., in *Smith* v. *Bell,* 6 Pet. 74. Certainly this rule is elementary, and does not require amplification. But we have been referred to some remarks of a learned English judge, the Lord Justice JAMES, in the recent case of *Wilson* v. *O'Leary,* Law Rep., 7 Ch. Ap. 448, which are supposed to indicate a different view; and as much stress has been laid upon that case, I may refer to it somewhat more at length than I otherwise should.

The case was, that a testator, by codicil, gave legacies of various amounts to nine legatees, and a year's wages to every one of his servants. He afterwards made a second codicil, which was substantially a copy of the former, except as follows : One of the legatees named in the first codicil was not named in the second; three of the legacies given by the second codicil were less than those given by the first to the same persons; one legacy was given by the second codicil to a person not named in the first; the gift to servants by the second codicil was of " a year's wages, liberally interpreted ;" and the second codicil contained a direction for payment of duty on legacies. *Held,* that the case was not taken out of the general rule ; that the gift of a legacy by a subsequent instrument to a person who takes a legacy under an earlier instrument is cumulative and not substitutionary. Near the close of his opinion the learned judge referred to has this remark : " I would only add this, that I cannot help feeling that this case has occupied more time than it would have done if I had throughout confined myself strictly to that which is my legitimate duty,—that is, if, instead of endeavoring to find out what the testator meant, I had confined myself to endeavoring to ascertain what was the meaning of the testamentary papers which he left behind him." But by this he could not have meant to say that the court should look only at the words of the instruments, and confine their inquiry to the grammatical and etymological construction of those words, for this would be at war with the most fundamental rules of interpretation. What was the actual intention of the testator, is in its nature an unmixed question of fact. The law requires that a will must be in writing, and so the question is What intention is to be found written in the will ? It is of no consequence what may have been the actual intention, any further than such intention is expressed in the writing. Nothing is to be imported and incorporated into the instrument by construction. But if there be doubt as to the meaning of the words, then intrinsic evidence furnished by an examination of all the testamentary papers together, and extrinsic evidence as to the situation of the estate, the relations of the testator, &c., are to be considered, in order that the court may look at the words as nearly as may be from the same position as that occupied by the testator.

There are one or two other observations in the opinion referred to, which I have found more difficulty in reconciling with what I understand to be the doctrine of the other cases, and with the course I have

taken in coming to my conclusion in this case. He says (p. 452),—
" The basis of the elaborate and able arguments which were addressed
to us by Mr. Kay and Mr. Pearson was, that taking the two codicils
out of which the question has arisen, and putting them side by side,
we, as men of the world accustomed to know how testators make testa-
mentary instruments, and judging of all the probabilities of the case,
cannot avoid arriving at the conclusion that the one codicil was a cor-
rected and revised transcript of the other, and that the omission to
deal expressly with the legacy to the housekeeper of £2,000, which
alone has saved the first codicil from entire destruction, was a casual
omission, an accidental slip, which has enabled her to claim her legacy,
but which is not otherwise sufficient to induce us to avoid the inference
which we are called upon to draw. In my judgment, the whole of
that contention is precluded by positive rule of law." And, again
(p. 454) : " When there is a positive rule of law of construction, such
as exists in these cases,—that is to say, that gifts by two testamentary in-
struments to the same individual are to be construed cumulatively,—the
plain rule of law and construction is not to be frittered away by a mere
balance of probabilities." By this I should understand is meant, that
the two codicils are not to be looked at side by side, for the purpose of
drawing inferences as to the intention of the testator by means of the
comparison ; and that there is an unbending rule of law which forbids
absolutely the holding of any bequest to be substitutionary when it is
repeated in a separate instrument.

Writers upon the law of evidence have undertaken to distribute pre-
sumptions of law into two classes, namely, conclusive and disputable—1
Gr. Ev., sec. 14 ; and Mr. Greenleaf says,—" In these cases of conclusive
presumption, the rule of law merely attaches itself to the circumstances
when proved ; it is not deduced from them. It is not a rule of infer-
ence from testimony, but a rule of protection, as expedient, and for
the general good "—*id.*, sec. 32. " The second class of presumptions
of law," says the same writer, "answering to the *presumptiones juris*
of the Roman law, which may always be overcome by opposing proof,
consists of those termed *disputable presumptions*. These, as well as
the former, are the result of the general experience of a connection be-
tween certain facts or things, the one being usually found to be the com-
panion or the effect of the other. The connection, however, in this
class is not so intimate nor so nearly universal as to render it expedient
that it should be absolutely and imperatively presumed to exist in
every case, all evidence to the contrary being rejected ; but yet it is so
general, and so nearly universal, that the law itself, without the aid of
a jury, infers the one fact from the proved existence of the other, in the
absence of all opposing evidence. In this mode the law defines the
nature and amount of the evidence which it deems sufficient to es-
tablish a *prima facie* case, and to throw the burden of proof on the
other party ; and if no opposing evidence is offered, the jury are bound
to find in favor of the presumption. A contrary verdict would be
liable to be set aside as being against evidence." *Id.*, sec. 33.

Assuming this to be correct,—that is, admitting, what it is not necessary now to discuss, that when the court declares fact A to be *prima facie* evidence of the existence of fact B, a proposition of law is enunciated,—the inquiry is, To which class of legal presumptions does the one under consideration in *Wilson* v. *O'Leary* belong ? I am unable to deduce any other meaning from the words of the Lord Justice JAMES, already quoted, than that he understood it to belong to the first class.

He speaks of the rule that gifts to the same individual by two testamentary instruments are to be construed cumulatively, as a positive rule of law, and says this plain rule of law is not to be frittered away by a balance of probabilities. This seems to mean no less than that you cannot go beyond the rule ; for, if you can go beyond the rule, and weigh evidence intrinsic or extrinsic against what is called the presumption of law, then it follows, inevitably, that the matter must be determined by a balancing of probabilities. I consider it safe to say that the cases are all the other way—see 2 Redf. on Wills (2d ed.) 178, note 3; and that, for the present, I regard a sufficient answer to the remark.

But it is said that the two instruments must be construed independently of each other, each being considered alone substantially as though the other did not exist ;—and it is thought that some observations of Vice-Chancellor BACON, in the same case of *Wilson* v. *O'Leary*, when before him—L. R., 12 Eq. 525—give countenance to that idea. I find nothing of the kind there. Doubtless the two instruments are not to be construed as one, for if they were, the presumption would be in favor of the executor instead of against him. But if the bequest in the codicil were of a specific thing, it would be strange indeed if the court could not look into the will to see if the same thing has been once given there.

Whatever may have been said of the soundness of Lord HARDWICKE'S judgment, in *Duke of St. Albans* v. *Beauclerk*, 2 Atk. 636, I am not aware that the course pursued by Lord ALVANLEY, M. R., in *Osborne* v. *The Duke of Leeds*, 5 Ves. 369, has been questioned. In that case the testator, by his will, gave £10,000 each to all and every of his after-born child or children. By a second codicil, made seven years afterwards, he gave to a daughter, born after the execution of the will, the same sum—£10,000. The two provisions thus made for the after-born daughter were considered side by side, and it was held that the legacy given by the codicil was not cumulative. The master of the rolls, in his opinion, said,—" The question, then, is to be considered upon the will and codicil taken together." So, in *Hemming* v. *Gurrey*, 2 Sim. & St. 311, Sir JOHN LEACH, V. C., says (p. 320),—"With respect to the plaintiff's claim of two annuities of £500 each, under the two testamentary papers of G. Hemming, I am of opinion that the second instrument was not made as an addition to, but as a substitution for, the first, if not wholly, at least in the greater part, and plainly as to the annuities in question. This is evident from comparing the form and expression of the two instruments, from the general similarity of the two annuities and lega-

cies, and from the particular gifts of the Barrow and Edgeware estates." And, in *Gillespie* v. *Alexander*, 2 Sim. & St. 145, the same great judge, holding a second legacy given in a codicil not to be accumulative, says (p. 151),—" Every legatee named in the first paper is again named in the other, except George Gillespie, who appears by the master's report to have been then dead; and in several instances, the amount of the legacies is the same as in the first paper."

In *Barclay* v. *Wainwright*, 3 Ves. 462, Lord ALVANLEY, speaking of *Coote* v. *Boyd* (2 Bro. C. C. 521), says,—" Upon the circumstances of that case, and the evidence resulting from a comparison of the two instruments, Lord THURLOW was clearly of opinion the second was not accumulative." He then goes on to compare the provisions of the several testamentary papers in the case before him, and to draw conclusions from the comparison as to the intention of the testator. The same was done by Lord THURLOW in *Moggridge* v. *Thackville*, 1 Ves., Jr., 464. So, in the clearest and best discussion of the subject I have found in any case—that of Sir JAMES WIGRAM, in *Lee* v. *Pain*, 4 Hare 201—the propriety of such comparison is recognized from beginning to end of the opinion; and I have seen no case where the propriety of making the comparison and of drawing inferences therefrom as to the intention of the testator has been denied, unless it is in *Wilson* v. *O'Leary*. My opinion is, that such comparison is not only proper, but necessary and unavoidable.

I have said that I attach weight to the circumstance that the testatrix used the word " more " in every other instance where she introduced in the codicil the name of a beneficiary before mentioned in the will, and the propriety of this is questioned or denied by counsel for the defendants on the strength of some observations of Sir JAMES WIGRAM in *Lee* v. *Pain*. I may say that, in my judgment, no higher authority on a question of this sort can be quoted. I have, therefore, attentively examined his opinion in the case referred to, and find that, so far from laying down any such general proposition, he distinctly admits that this is a circumstance to be considered, although he carefully guards himself against giving that circumstance too much weight in the case before him, and fortifies his position by arguments drawn from a comparison of the several testamentary instruments, as well as the axiomatic fact, that where two gifts are actually made at different times, the second is in addition to the first, whether stated to be so or not. He commences his discussion of this point with the remark, "It would be difficult to say, in the abstract, what degree of weight is due to an expression like this " (p. 218), and closes it, when considering the matter again at a subsequent stage of the case, by saying, "The observations I formerly made upon those words show that in my judgment they are in this particular case more than counterbalanced by other considerations " (p. 234). In the course of the discussion, he says,—" In *Russell* v. *Dickson*, 2 Dru. & War. 133, the Lord Chancellor of Ireland seems to me to have stated with great accuracy all that can fairly be said on the subject. He says,—' I assent to the argu-

ment, that, if a testator expressly declares one gift to be in addition to another (and for this purpose the court is entitled to look at other parts of the same instrument, or at gifts in other testamentary instruments), and in another instance he makes a gift without any such declaration, this is a circumstance to show that the latter was intended not to be additional, but in substitution.    But, still, too much weight must not be attached to the variation.    To hold that it is conclusive would be going too far.    It is a circumstance, no doubt, important to show, that, where the testator meant addition, he knew how to express his meaning ; and a party is entitled to rely upon it to that extent.' " This puts the matter entirely at rest, so far as regards the views of the learned vice-chancellor as expressed in *Lee* v. *Pain*, and shows that the weight to which this circumstance is entitled in one case can afford no exact measure for determining its significance in another, where the two testamentary instruments under consideration are different.

So we see that, in *Allen* v. *Callow*, 3 Ves. 292, the master of the rolls, Lord ALVANLEY, says,—" That is not an insignificant circumstance, but it is not decisive, for the same thing was done in one of the codicils in *Hooley* v. *Hatton ;* but it does strengthen the argument of those who contend that one of these dispositions is substituted for the other;" and in *Barclay* v. *Wainwright*, 3 Ves. 466, the same judge says, " and I lay considerable stress upon this,—that where the testator meant addition, he has expressed it."    So, in *Mackenzie* v. *Mackenzie*, 2 Russ. 262, Lord ELDON has a remark, which, as it seems to me, indicates that in his judgment this circumstance must be entitled to very considerable weight.    He says,—" It is true, on the other hand, that the testator has expressly declared that the legacy given by the codicil to Margaret Lincoln should be ' exclusive of any former provision ' made by him for her in his last will and testament ; and if there were no other facts connected with this will and codicil, it might be difficult to say what weight ought to be attached to the words used concerning that bequest. But there are other circumstances which, it seems to me, lead to a contrary inference."    Other cases might be added ; but this is sufficient, so far as regards authority, to show the ground upon which I have supposed the circumstance under consideration ought to be weighed by the court in determining the intention of the testatrix.    Upon the reason of the thing I cannot entertain a doubt.

I have thus undertaken to show that the various considerations which have inclined my mind to the result announced in the outset are such as should properly be weighed by the court.    I only propose to inquire, further, what degree of conviction these considerations must produce in the mind, one way or the other, to warrant a decision : Is the construction in this respect to be decided according to the balance of probabilities ? or must all doubts be removed, and, if so, upon which side rests the burden of removing them ?

We start with what is called a presumption, growing out of the fact that a legacy is given both in the will and the codicil, that the testator intended two gifts.    The authorities already referred to afford

ample evidence that this presumption is regarded as what Mr. Green-leaf calls a disputable presumption ; that is, if no evidence the other way appears from an examination of the two testamentary papers to-gether, the court must hold the intention to have been to give twice : in other words, that this circumstance shows *prima facie* that the second legacy is accumulative. But, upon looking into the papers, intrinsic evidence the other way is found, and a question more or less doubtful is thus raised. It requires no great acumen to see that this question is in its essence purely one of fact, in the decision of which it is only necessary to take care that incompetent evidence be not received and con-sidered. Can anything be plainer than that weighing evidence against what is thus called a disputable presumption is nothing more nor less than another name for balancing probabilities ? In reality, the whole formula seems to come simply to this : when intrinsic evidence against the presumption is found in the will and codicil, the circumstance of a gift being made in both is evidence of an intention to give twice ; and before it can be held that the intention was to make but one gift, this piece of evidence must be met and overbalanced by stronger intrinsic evidence the other way. I am of opinion that when the question is thus raised and put in doubt, it is to be determined upon the evi-dence by a balancing of probabilities ; and I think the matter has been practically so treated in all the cases referred to, including *Wilson* v. *O'Leary*, notwithstanding the remark already quoted from the opinion in that case, to the effect that a positive rule of law is not to be frit-tered away by a mere balance of probabilities.

\* STANLEY, J., C. C. I am also of opinion that the legacy to the defendants in the codicil is to be regarded as substitutionary, and not cumulative.

The question to be determined is, What was the intention of the tes-tatrix ? That intention is to be ascertained from the testamentary papers which she left, aided by such circumstances as may properly be considered by the court. " There is no deviation from the rule, that all the papers which constitute the testamentary act are to be taken together, embracing the will and codicils, and all papers referred to are to be incorporated with the same." Redf. on Wills (ed. of 1864) 435 ; *Wescott* v. *Cady*, 5 Johns. Ch. 343 ; *Willett* v. *Sanford*, 1 Ves. 186.

" The construction of a will depends upon the intention of the testa-tor, to be ascertained from a full view of everything contained ' within the four corners of the instrument.' Where language admits of two constructions, one reasonable and natural in its direction of property, and the other capricious and inconvenient, courts of justice may nat-urally be expected to lean toward the former as being what was prob-ably intended." Redf. on Wills (ed. of 1864) 435–439.

" It is true, that, where the same person is mentioned as legatee in the will and in the codicil, the presumption is that the legacy in the

---

\* Cushing, C. J., did not sit.

codicil is cumulative and not substitutionary; but that presumption is not very strong, and slight circumstances have been held to control it." *Coote* v. *Boyd*, 2 Brown C. C. (Perkins's ed.) 405; 2 Lead. Cas. in Eq., Hare & Wall., notes, 544; *De Witt* v. *Yates*, 10 Johns. 156.

"Where legacies are of the same sum, but given by different instruments, there will always arise considerable doubt in the mind whether they are or not mere repetitions.   Hence, although the general presumption that the gifts were intended to be cumulative will prevail in the absence of all ground of contrary presumption, it is evident that slight evidences of a contrary purpose in the mind of the testator will incline the court to adopt such a conclusion; and some of the more recent cases seem to incline to the conclusion that the mere repetition of the legacies before given in the will or codicil, or in an additional codicil, ought not in itself alone to form any sufficient ground to allow both."    2 Redf. on Wills (ed. of 1866) 510, 511, and notes.

In the light of these principles, what was the intention of the testatrix, as derived from the two testamentary papers she left, and the intrinsic evidence contained in them?   So far as these defendants are concerned, was the legacy to them in the codicil intended by her as cumulative, or substitutionary?   This is a question of fact, to be determined by the court, like all other questions of fact in civil causes, by a balancing of the evidence competent to be considered for that purpose, the burden of proof being upon the executor.

It is evident that the codicil was not intended as a substitute for the original will, from the fact that only a very small proportion of the legatees named therein are named in the codicil;—in fact, with the exception of those to whom, in express terms, she gives "more" than she had given by the will, the defendants are the only legatees named in the codicil that are named in the will.   The codicil seems to have been designed by the testatrix as an addition to her will, and as made for the purpose and the sole purpose of giving to some of the legatees under it an additional amount, and legacies to others not mentioned in it.

It is conceded that the testatrix was a person of good business capacity; that she drew the codicil with her own hand; that she understood the force and effect of language.   In view of this, it seems to me that great weight is to be attached to the word "more," which she used in the various items of the codicil, where she gave the additional amounts to some legatees.   Upon what reasonable hypothesis can it be explained that she used that word when giving additional amounts to some, and did not use it when, as the defendants claim, giving an additional amount to them?   Had it been her intention to double the legacy to the defendants, it could have been very easily done in the same way that she increased the legacies to the others by the use of the word "more;" and it is the most natural inference that she would have done so.

In the third item of the codicil she names six societies, all similar in their objects, and all in Boston.   The third in that list is the defendants'.   If she had intended to give five thousand dollars in addition to

the amount in the will, it would have been easy and natural for her to have named them first, and she would have said, " I give and bequeath to the Boston Seaman's Aid Society five thousand dollars more," and five thousand dollars to each of the following named societies, naming those not mentioned in the will. If she had intended the legacy to the defendants as an accumulation and not as a substitution, it would have been in its proper place immediately following the other cumulative legacies, and not in the middle of another clause in the will, where legacies are given to legatees for the first time.

If it be regarded as cumulative, it is not according to the general plan of the testatrix, as shown both in the will and codicil. To no similar society in Boston, or elsewhere, does she give more than five thousand dollars, except the Sailors' Snug Harbor, and that corporation or society is not named in the codicil. If it be said that probably her wealth was derived from business in which sailors were engaged, and on this account, and knowing the temptations and perils which beset them when in port as well as when on sea, she was anxious to testify her appreciation of them and to aid them, and, therefore, intended this as an accumulation, it may be answered, that the interest in this class is shown by the fact that in her will she gave twenty thousand dollars to the Sailors' Snug Harbor, and five thousand dollars to the defendants, they both having the same object in view—a larger amount than she gave to any other charitable use, except for the founding of a free public library in Kittery, the birthplace of her father.

The expression, too, used when she gives additional to the Portsmouth societies and to the fund for the free public library in Kittery, is explicit, and plainly indicates that she did not mean that her intentions and wishes, as to them, should be open to doubt. In the will the four Portsmouth societies are grouped together, and she gives to them three thousand dollars each. In the codicil she says,—" I give and bequeath two thousand dollars more to the fund for the benefit of the Howard Benevolent Society, and two thousand dollars more to the Domestic Missionary Society." Whatever may have been her intentions as to the defendants, she so expressed herself as to leave no doubt as to her wishes with regard to other objects of her bounty to whom she wished to give additional legacies ; and so expressing herself with regard to them is very convincing to my mind upon the question of what was her intention with regard to the defendants. It seems to me, too, that a strong argument is drawn from the fact that to all societies in Boston of a similar character and similar objects she gives an equal amount. This view of the cases preserves the symmetry and impartiality of the testatrix. It is also strengthened by the fact, that the codicil is just as it would have been had the provision in favor of the defendants been inserted by mistake, and just as the remaining parts of the codicil show that it would not have been, if she had intended to double the bequest to the defendants.

I am aware that the word "more," as used in the codicil, is not conclusive ; but that it is entitled to great weight, and goes very far to.

strengthen the arguments to be deduced from other parts of the testamentary papers, cannot be doubted. Great stress is laid upon the case of *Lee* v. *Pain*, 4 Hare 201, in support of the position that the legacy in question is cumulative, and not substitutionary; but a careful examination will show that in many respects it is not like the present, and that even there the learned vice-chancellor admits that expressions in a codicil, similar to those in this, are not without weight in determining questions similar to those here presented. I have not thought it advisable to go into an examination of the large number of cases which have been cited, but have the rather contented myself with stating some of the reasons which have led me to concur in the opinion that the legacy to the defendants is substitutionary, and not cumulative.

SMITH, J., dissenting. The rule for solving the principal question raised in this case is well settled. As laid down in *Ridges* v. *Morrison*, 1 Bro. C. C. 389, by Lord Chancellor THURLOW, it is, " that, where a testator gives a legacy by a codicil as well as by his will, whether it be *more, less,* or *equal,* to the same person who is legatee in the will, it is an accumulation." This rule was adopted from *Hooley* v. *Hatton* (see note at end of *Ridges* v. *Morrison*, 338), which case, Lord THURLOW observed, was examined with abundant care; and he accompanied that observation with a remark that it was unnecessary to repeat the cases after reading the very able opinion of Mr. J. ASTON, which, he said, contained the whole doctrine of the law upon the subject.

Mr. Roberts sums up the rule, as established by the decisions, in these concise words: " The state of the presumption, according to the varying circumstances of the case, seems to be settled by the result of the authorities upon the following *criteria*, viz.: Where the same *specific thing* or *corpus* (as a diamond ring where the testator has but one) is twice given to the same person, either by the same instrument, or by different instruments, then, in the nature of the thing, it is but a repetition. Where the same *quantity*, as 100*l.*, is twice given by the *same* instrument, the presumption *simpliciter* is against the legatee; but where the same quantity is given by the same instrument, with any additional cause assigned for it, or with any material circumstance of variation accompanying the second gift, the presumption is turned against the executor in favor of the accumulation. Where equal sums are given in two *distinct* writings, or a larger after a less, or a less after a larger, the latter gift is construed an accumulation.

" But though the presumption in a case, wherein two legacies of the same sum or quantity occur in distinct instruments, leans against the executor, yet it is only a presumption *simpliciter*, and is turned the other way where the same cause is expressly assigned in both instruments for the gift, without any additional reason." 2 Rob. on Wills 8, citing Menochius *de presumptionibus, lib. præs.* 128, No. 4, 13, 14, and Swinb., part 7, ch. 20, fol. ed. 550.

The same rule is laid down in *De Witt* v. *Yates*, 10 Johns. 156, by KENT, C. J., in these words: " The general rule on this subject, fro ma

review of the numerous cases, appears evidently to be, that where the sum is repeated, *in the same writing*, the legatee can take only one of the sums bequeathed. The latter sum is held to be a substitution, and they are not taken cumulatively, unless there be some evident intention that they should be so considered, and it lays with the legatee to show that intention and rebut the contrary presumption. But where the two bequests are in *different instruments*, as by will in the one case and by a codicil in the other, the presumption is in favor of the legatee, and the burden of contesting that presumption is cast upon the executor. The presumption either way, whether against the cumulation, because the legacy is repeated in the same instrument, or whether in favor of it, because the legacy is in different instruments, is liable to be controlled and repelled by internal evidence and the circumstances of the case."

The question of cumulative legacies has often arisen in the English courts, and has been very learnedly and ably discussed by the judges of those courts. We have been cited to no case, in this or the other New England states, on the subject, by counsel, in their briefs or arguments. I am not aware that this question has until now been before the courts of this state.

The question was familiar to the civil law, which required the clearest evidence of intention to give double legacies when the repetition was in the same instrument. Dig. 30, 1, 34.

*Suisse* v. *Lowther*, 2 Hare 424, and *Lee* v. *Pain*, 4 Hare 201, are cases very much in point. In the former case, Sir JAMES WIGRAM, V. C., remarked,—" The argument against the cumulative character of the legacy, given by the codicil I am now considering, was founded, first, on the coincidence in amount between the two former legacies and the latter ; and, secondly, on the fact that the other legacies given to Mr. Croker and others in the same codicil have the word ' additional ' appended to them, while in the legacy to Suisse that word is not used. Leaving out the introductory part of the codicil, the question would certainly arise, whether the effect of the word ' additional ' to some of the gifts, and omitted in that to the plaintiff, would be to leave his legacy as a substitution for prior gifts. The cases, however, have expressly decided the point, that where there is nothing but the circumstance of omitting such words, the court does not consider it sufficient to control that which *prima facie* is the meaning of the bequest. Where the mere bounty of the testator is the only apparent motive for the bequest, and no other is expressed, the rule is that the legatee shall take in addition."

*Lee* v. *Pain, supra,* is a leading English case, and one on all fours with this upon the question of cumulative legacies. By her will, the testatrix, amongst other legacies, gave to thirteen persons, who are named in one sentence, £100 apiece : Mr. Brown was one of them. By the first codicil, after varying some of the bequests in her will, and giving to the trustees of the chapel on Clapham Common, at which she attended, the sum of £100, to be laid out for the benefit of the chapel,

she gave Mr. Brown, describing him in this place as " minister of the said chapel," the sum of £100, and then she confirmed her will. By her third and fourth codicils she gave legacies to Mr. Brown, expressed to be in addition to what she had before given him. The question arose upon the will and first codicil. The master to whom the papers had been sent considered that the legacy in the first codicil was a mere repetition of that in the will, and allowed Mr. Brown one legacy of £100 only, namely, that in the first codicil. Sir JAMES WIGRAM, V. C., held that Mr. Brown was entitled to both legacies, and remarked,—" The legacies being given in two different instruments, the legatee is entitled to both, unless the effect of the two separate gifts can be taken away by something to be found in the construction of the second instrument, or by presumption of law. If each of the instruments simply gives a legacy to the same individual, it would manifestly contradict the effect of one or other instrument if the legatee were not allowed to claim both legacies, and, accordingly, he would in that simple case be entitled to both ; and as the right to both legacies is in such cases found in the construction and effect of the instruments, no extrinsic evidence is admissible to prove that the legatee was intended to take one legacy only. * * * The first circumstance relied on in support of the report was, that in the first codicil the testatrix has expressed that some of the legacies thereby given, are given in addition to those given by the will, and that that expression is not used in the bequest to Mr. Brown ; and cases were referred to in which stress has been laid upon like expressions. It would be difficult to say, in the abstract, what degree of weight is due to an expression like this. The words ' in addition ' do not in themselves add anything to the effect of a simple bequest without those words. The legacies would be additional without them. The question is not, as it was put in the argument, whether I am to reject those words, but whether I am to give a particular bequest less than its proper operation, only because superfluous words are used in another bequest. The argument cannot be carried beyond that. It arises only out of the contrast between two different forms of bequest, to one of which the words are, to the other of which they are not, applied,—raising, it is said, an inference that the intention in the two cases must have been different because the forms of expression are so. In the simple case of legacies by will to each of two individuals, A and B, and no other legacies in the will, and of a codicil giving legacies to the same individuals, and one only of those legacies (the legacy to B) expressed to be in addition to the legacy given him by the will, the question would arise whether less than the proper legal effect was to be given to the bequest to A, only because superfluous words were used in the bequest to B. But whatever effect might be given to the expression ' in addition ' in that simple case, if any other circumstances appeared in favor of A's claim to both legacies,—as, for example, if the will contained legacies to C, D, and E, as well as to A and B, and C, D, and E were not named in the codicil,—a very different question would arise. For the argument in A's favor would then be,

Why name A in the codicil and not name C, D, and E also, unless A was intended to take under the codicil as well as under the will? [See Ves., Jr., 473.] And in the face of such an argument, it might be difficult to deprive A of the additional legacy which the law gave him. The courts certainly have laid little stress upon such words. Perhaps it would not be going too far to say that they never have been relied upon in judgment, except to confirm or rebut reasoning arising out of other parts of wills. I do not think any case can be produced in which the court has acted upon such words alone in depriving a legatee of a legacy given him under a second instrument."

Judge REDFIELD, in his work (2 Redf. on Wills, ch. 13, sec. 51), remarks,—" It is obvious that each particular case will commonly afford some ground of conjecture more or less satisfactory, whether the naming of the gift more than once is a mere repetition, or is for the purpose of enhancing the bounty. It must therefore be admitted, in the language of an eminent judge (Ch. Jus. HORNBLOWER, in *Jones* v. *Creveling*, 4 Har. 127), that, notwithstanding all the nice distinctions which have been taken by the courts upon this subject, we must come at last to the plain, common sense question, What was the intention of the testator, as indicated by his language, viewed in the light of surrounding circumstances?"

Arabella Rice executed her will May 18, 1867. The twelfth clause of the same is as follows: "*Twelfth.* I give and bequeath to the following named charitable societies in Boston, in the county of Suffolk and state of Massachusetts, the sum of five thousand dollars ($5,000) each, to wit: To the Association for the Relief of Aged and Indigent Females, to the Channing Hospital for Sick and Destitute Women, to the Society for the Prevention of Pauperism, to the Seaman's Aid Society, and to the Boston Dispensary: the annual income of each of said bequests is to be applied by said societies to the purposes to which they are respectively instituted, and the principal of each is to be kept and invested as a permanent fund."

On the second day of July, 1868, she executed a codicil, written by herself, in the room where her will was kept. By the first clause, she gave $2,000 more to the fund for the Howard Benevolent Society, and $2,000 more to the Domestic Missionary Society in Portsmouth.

By the second clause she gave $10,000 more to the fund for a free public library in Kittery, Me.

The third clause is as follows: "*Third.* I give and bequeath the sum of five thousand dollars to each of the following societies in Boston, in the state of Massachusetts, viz.: The Howard Benevolent Society, the Boston Provident Association, Boston Seaman's Aid Society, House for Aged Men, Consumptives' Home, the Massachusetts Infants' Asylum, and the Massachusetts General Hospital—the five thousand dollars ($5,000) to be appropriated entirely to free beds in the Massachusetts General Hospital."

The executor contends that the legacy given to the defendants by the codicil is substitutionary for the legacy given to the defendants by the

will ; that, in fact, the defendants' name was written in the codicil by mistake, she not remembering that it had been already included in the will. In support of this theory the executor advances two arguments,— (1) that founded on the alleged character of the testatrix, and the symmetry and method with which her will is drawn ; and (2) that founded on the intrinsic evidence furnished by the context of the will and codicil. These two arguments, if well grounded, it seems to me, are inconsistent with and defeat each other. For the purpose of examining the soundness of these positions, I adopt a convenient classification of the legacies given by the will and codicil, furnished in the defendants' brief.

The will contains 16 clauses.

1. The testatrix gives equal legacies to her first cousins, as a class ; and

16. She makes the same persons, i. e., her first cousins, her residuary legatees, dividing the residue equally amongst them.

2–6. She gives equal legacies to several persons, variously described as first and second cousins of her late father and as relatives of her own, and to Gov. Goodwin, not described as a relative. This shows equality between different classes of legatees, and not equality between legatees of the same class.

7. She gives equal legacies to four charitable societies of Portsmouth.

8, 9. She gives like legacies to a literary and a religious society.

10. She gives a much larger legacy, viz., $20,000, to another literary society.

11. She gives the Insane Asylum at Concord $20,000.

12. She gives five charitable societies of Boston equal legacies ; but the amount is larger than the legacy to the Portsmouth charitable societies.

13. She gives a charitable society—the " Sailors' Snug Harbor," whose object is the same as that of the defendants'—the care of seamen —a legacy four times as large as that given the defendants in clause 12.

14. She gives a Boston literary society a like legacy to that given in clause 8 to the Portsmouth literary society.

15. She selects out two of her twelve first cousins, and gives to them, by name, an ancient Bible, ring, and certain articles of silver and china ware, heirlooms of the family.

Taking the facts as they appear in the will, we find,—

1. That the testatrix gave a class of relatives, in the same degree, equal legacies.

2. To relatives not of the same degree, and to a stranger, equal legacies.

3. To literary societies of different places, equal legacies.

4. To charitable societies of different places, unequal legacies.

5. To some charitable societies of the same place, equal legacies.

6. To other charitable societies of the same place, unequal legacies.

7. To two of twelve relatives, designated by name, specific legacies of certain articles of special value, from the long associations connected therewith.

I do not find here any evidence of a systematic plan of disposing of her property, such as excludes the idea that she had no preferences among her relatives. On the contrary, two of her first cousins are preferred above the other ten in disposing of her Bible, ring, and silver and china ware,—articles for which she evidently cherished feelings of attachment, from their having been handed down in the family for several generations. The legacy to the Sailors' Snug Harbor of $20,000, a sum four times larger than that given seven other charitable societies in Boston, and given to a society of like objects with the defendants', indicates that she took a special interest in the welfare of seamen, and in the efforts to save them from the degrading influences by which they are too often surrounded. Can it be said that there is any limit which can be affixed to her bounty in this respect?

But, granting that the will shows all the systematic plan that is claimed for it, the codicil unmistakably overturns it. By the seventh clause of the will, she gives to the Portsmouth Marine Society, to the Domestic Missionary Society, to the Howard Benevolent Society, and to the Humane Society, all charitable societies of Portsmouth, the sum of $3,000 each, the principal to be invested and preserved as a permanent fund, and the annual income only to be expended for the charitable purposes of said societies respectively. By the first clause of her codicil, she gives " $2,000 more to the fund for the Howard Benevolent Society, and $2,000 more to the Domestic Missionary Society in Portsmouth, N. H." These two societies are thus preferred over the Marine Society and Humane Society, mentioned jointly with them in the seventh clause of the will, and over all the other charitable societies named in the will, including the defendants if the plaintiff is correct, or except the defendants if the defendants' position is correct. The use of the word " more " clearly indicates her intention to do just what the law would presume in the absence of that term ; that is, that the sum mentioned in the codicil is in addition to the sum given in the will. *Lee* v. *Pain* and *Suisse* v. *Lowther, supra.* The term was unnecessary, and has no significance, except so far as it throws light upon her intentions in respect to the legacy in question.

In the second clause of the codicil she gives $10,000 more to the fund for a public library in Kittery, Me.

Thus far in the codicil the use of the word "more" was appropriate, because the legacies in the first and second clauses of the codicil were in fact in addition to legacies given to the same beneficiaries in the will; and although, as we have seen, it was unnecessary, yet it changed no legal inference, and only served to indicate clearly that the testatrix was desirous of increasing the sums given in her will to some of her legatees. We now come to the third clause, by which she gives $5,000 to each of seven charitable institutions in Boston—the third one mentioned being the defendants. As neither of the other six had been mentioned in the will, and are now made legatees by her for the first time, it would not only have been, as to them, inappropriate, but inaccurate, to have inserted the word " more " in the third clause of the

codicil. There is no place in the sentence where the word could have been inserted so as to apply to the defendants and not to the other six societies, without reconstructing the whole sentence. For some reason, probably because they were all Massachusetts and Boston societies, she included them all in the third clause of the codicil. The defendants could not be conveniently included in the first clause, because the sum which she wished to give to the two Portsmouth societies mentioned therein was $2,000 each; nor in the second clause, because the sum given the town of Kittery was $10,000. But the additional sum which she wished to give the defendants being the same as that given the other six Boston societies ($5,000), the natural and convenient place to insert the defendants' name was in the third clause, with the other Boston societies, to whom she gave the same amount. It is true, she might have added a fourth clause for the mention of the defendants' society if the gift to them was intended to be cumulative; and so, too, she might have inserted the words that the legacy was substituted for that given in the will, if she had chosen to do it in that way;—for it will be observed that by the twelfth clause of the will the sum bequeathed was to be invested, and the income only used for the charitable purposes of the society, while by the codicil the gift is *simpliciter*, and both income and principal are subject to the uncontrolled disposal of the defendants for the charitable purposes of their society. And it may well be assumed that the testatrix, being a woman of intelligence and ability, with her will before her, or at least familiar with its contents, and writing the codicil herself without aid from a lawyer, intended the second legacy of $5,000 to be at the disposal of the society without the restrictions with which she had surrounded the first legacy. How else can it be explained that the five Boston societies mentioned in the twelfth clause of the will are allowed to expend the income only of their legacies, while the six other Boston societies mentioned in the third clause of the codicil were not restricted in the same manner? Is not the inference plain, that having, some fourteen months after the execution of her will, some $50,000 more to dispose of, probably the income during that period of her large estate, she intended that the first legacy to the defendants should remain as a lasting monument to her memory with the unfortunate men that would be relieved from year to year from the income of the legacy given in the will, while the second legacy would remain to be applied to such immediate and pressing necessities as the wants of the society might imperatively demand? Is not this a case of a double legacy, " with a material circumstance of variation accompanying the second gift, so that the presumption is turned against the executor in favor of the accumulation "? 2 Rob. on Wills 8. Are these legacies *ejusdem generis?* If not, then the rule is, that that fact tends to raise a presumption that they were intended to be cumulative. *Masters* v. *Masters*, 1 P. Wms. 421; 2 Redf. on Wills, ch. 13, sec. 9. Where one of the sums is given absolutely, and the other only contingently, they will be regarded as distinct gifts. *Hodges* v. *Peacock*, 3 Ves. 735. So

where the gifts become payable at different times. *Ridges* v. *Morrison*, *supra; Currie* v. *Pye*, 17 Ves. 462; *Hurst* v. *Beach*, 5 Madd. 351. In the latter case, Sir JOHN LEACH, V. C., said,—" I think the true result of the decisions, as they apply to the present point, is to be stated thus: Where a testator leaves two testamentary instruments, and in both has given a legacy *simpliciter* to the same person, the court considering that he who has twice given, must, *prima facie*, intend two gifts, awards to the legatee both legacies; and it is indifferent whether the second legacy is of the same amount, or less, or larger, than the first; but if in two instruments the legacies are not given *simpliciter*, but the motive of the gift is expressed, and in both instruments the same motive is expressed, and the same sum is given, the court considers these two coincidences as raising a presumption that the testator did not by the second instrument mean a second gift, but meant only a repetition of the former gift.

" This raises this presumption only where the double coincidence occurs of the same motive, and the same sum, in both instruments. It will not raise it if in either instrument there be no motive, or a different motive, expressed, although the sums be the same; nor will it raise it if the same motive be expressed in both instruments, and the sums be different."

And so, where a second legacy is less beneficial to the legatee than a previous one, this adds to the presumption already in his favor, that a distinct gift was intended. *Suisse* v. *Lowther*, *supra*, 433; *Masters* v. *Masters*, 1 P. Wms. 421.

The presumption in favor of accumulation is strengthened by any circumstances of difference between the two gifts, whether it be found in the amount, in the character in which it is given, in the mode of enjoyment, in the extent of interest, or in the motive for the bounty. *Suisse* v. *Lowther*, *supra*, 433. Here is a clear and marked difference in the character and mode of enjoyment in which these two legacies are given. The first is to remain a perpetual fund, and the income only can be expended for the charitable purposes of the society. The second is a legacy *simpliciter*, given without restrictions. And to make this distinction more marked, it will be observed that the Massachusetts General Hospital alone is singled out in the third clause of the codicil from the other six legatees, and the legacy to it is to be appropriated entirely to free beds.

WIGRAM, V. C., in *Lee* v. *Pain*, *supra*, 201, says the true value of the fact of the presence of the word " more," or " in addition," or the like, in some cases and not in others, is, that it is a circumstance which may corroborate or be corroborated by other facts, and so show some particular intention of the testatrix. Failing to discover a systematic plan of such unbending character as the executor claims, and the execution of the codicil having broken in upon whatever of system there is in the will, there is little to corroborate or be corroborated by the use of the word " more." Undoubtedly there is more or less of plan or system in every will. As a general rule, every

person approaches this, one of the solemn events of his life, impressed with a sense of the gravity and responsibility of the work. And it would be idle to deny that this testatrix exhibited unusual evidence of system or method in the disposition of her estate by will ; but I fail to see that it was of that inflexible character that would exclude the idea that she had no preferences, which she did not fail to exercise ; while the first and second clauses of her codicil, as I have attempted to show, prove that she did have preferences, among the objects of her bounty of the same class, which she exercised. The very large legacy of $20,000 given by her in her will to the Sailors' Snug Harbor, in addition to the legacy of $5,000 given to the defendants in the same will, a sum nearly equal to the amount of all her legacies to all other charitable societies (exclusive of literary and religious societies), is very strong evidence that the cause of seamen was one in which she was deeply interested, and affords a strong reason why she wished to add to the legacy to the defendants by giving another sum of $5,000 in her codicil.

Again : it appeared in the argument, that by an act approved March 1, 1867, the societies known as " the Managers of the Port Society of Boston " and " the Seaman's Aid Society " were united under the name of the " Boston Port and Seaman's Aid Society." Her will was executed soon after (May 18, 1867), and probably before the community had generally become aware of the change, and so she used the old name in her will of the " Seaman's Aid Society." But her codicil was executed more than a year later (July 1, 1868), in which she refers to the society by the name of the " Boston Seaman's Aid Society." The dual character of the society, as suggested by counsel in argument, may have furnished her with a reason she should wish to double her legacy to it.

Another reason why these legacies should be held cumulative, I cannot better express than in the language of the learned counsel for the defendants in his brief. " Here it is again important to consider the use of the word ' more.' By the general rule, if there had been no distinction between the gifts made by the codicil, the use of the word ' more ' would be superfluous, for the gifts would be cumulative without as well as with it ; but as used it is not superfluous, for one class of gifts are, in addition to the fund, already created—' more to the fund ' are her words. Here it is necessary to show the use of the gift ; but when she gives simply without the restriction as to the use, she omits the unnecessary word, and its absence, instead of being against the defendants, is a circumstance showing the intention to be as they claim, that they take the $5,000 given by the codicil for the general uses of the society."

Another difficulty occurs to me, if the second legacy is to be held a repetition of the first, and that is, Under which instrument will the defendants take ? If under the will, then the gift is for an express purpose, and the principal must be invested, and the income only used ; but if under the codicil, then the gift was *simpliciter*, and more directly

beneficent to the society. The very reason why one legacy is held to be a repetition of another, or substitutionary, is because the motives for giving and the uses to be made of the legacies are the same. But here is a case where not only the motives must be different, but the uses are widely different.

It may well be asked, If the legacy in the codicil was substituted for that in the will, why did not the testatrix say so? Did she not understand what she was doing? She had sufficient intelligence to say, in the first and second clauses of the codicil, without the aid of a lawyer, that the gifts were "more to the fund"—not gifts *simpliciter*, but additions *to the fund*. If she was the intelligent and methodical woman the executor claims, and intended to substitute the legacy in the codicil to the defendants, which is a gift *simpliciter*, for the legacy in the will, which was burdened with the perpetual restriction to be invested and the income only to be used, why did not she so say in apt words? I freely concede the intelligence and good sense of the testatrix, and I am entirely satisfied that she did not so say because she did not so intend. She intended just what the law presumes from the language she used, that the second gift was a gift *simpliciter*, and cumulative, while the first gift she intended to be kept *as a fund;* and if not in perpetual remembrance of her, it would, in fact, be a perpetual monument of her munificence to the unfortunate class of persons for whose benefit its annual income would be devoted.

Again : the gift of a legacy by the codicil of the same amount, as legacies by will to one only of a class, is readily explained upon the supposition that her intentions as to that one were different from what they were as to the others. But the plaintiff claims the defendants' name was inserted in the third clause in the codicil through forgetfulness or mistake. I can hardly suppose the testatrix had forgotten her will. The opening sentence of the codicil, written by herself, is,— " Be it known that I, Arabella Rice, of Portsmouth, do make and declare this to be a first codicil to my last will and testament, dated May 18, 1867."

This codicil was written by herself, in the room of the safety vault where her will was deposited for safe keeping, and, as I think we are warranted in presuming, with the will before her. From the references to the will contained in the codicil, it is clearly apparent that she had it before her, or was familiar with its contents. The extreme improbability that a woman so careful and methodical as she is claimed to have been, with her will either before her or within her reach, making such a mistake, is a possibility too remote to be weighed against the presumption in favor of cumulation ; while if there be any difficulty here, occasioned by want of care in the testatrix in not saying that this legacy to the defendants in the codicil was a substitution for that in the will, or in not saying that it was in addition to it, the pecuniary legatee, and not the residuary legatees, is entitled to the benefit of the doubt which that want of care has occasioned. *Lee* v. *Pain, supra,* 236.

It is not claimed here that the codicil is itself a substitution for an integral part of the will, for the only point of resemblance between the will and the codicil arises out of the legacies to these defendants. Where all the legatees in a will are provided for in a codicil, the case is open to the claim that the testator may have intended to substitute the codicil for that integral part of the will by which legacies are given. But that case does not arise here, and there is no occasion to pursue the inquiry in that direction.

As to the question of interest, the rule in such cases was settled in *Loring* v. *Woodward*, 41 N. H. 391, and I see no occasion to question its correctness. The defendants are entitled to interest after one year from the death of the testatrix.

And I am of opinion the defendants are entitled to both legacies.

*A decree is to be entered in accordance with the views of the majority of the court.*