KIMBALL *v.* LANCASTER & a.

The interpretation of a will is the ascertainment of the testator's intention; and the question of intention is ordinarily determined as a question of fact by the natural weight of competent evidence, and not by rules of law.

BILL IN EQUITY, for an adjudication of the conflicting claims of the defendants to a balance remaining in the hands of the plaintiff as trustee under the will of Charles Moody. The following are the material provisions of the will:

"2. I give and bequeath unto my said wife the income of all my remaining property, real, personal, and mixed, said property to be placed by my executor in the hands of John Kimball [the plaintiff], in trust for the use and benefit of my said wife during her life,—provided, if in the judgment of said trustee the income of said property is not sufficient for the support and maintenance of my said wife, then said trustee is directed to expend so much of the principal for her support as he deems necessary; and I authorize him to sell and convey any of said property, without license from the court of probate, and to execute as good and valid conveyance of the same as I could do if living.

"3. After the decease of my said wife, I give and bequeath the property then remaining in the hands of said trustee, to be paid over by him as follows: To Frances M. Neal, * * * if living, the sum of $2,000,—if not living, to her heirs the sum of $1,000; to Phebe Ames, * * * if living, the sum of $100,—if not living, the same sum to Myra T. Kimball * * *; to Lucy A. Lancaster [one of the defendants], the sum of $200; to Jane Moody, * * * the sum of $200; to the children of said Jane, then living, $200 each, and $200 to the heirs of each deceased; to Charles M. Rolfe, son of Mary J. Rolfe, $100."

By the fourth clause of the will the plaintiff is appointed executor. By a codicil, the testator gives to Mary J. Rolfe $200; revokes the bequest of $1,000 to the heirs of Frances M. Neal, and gives them $2,000, "if the said Frances is not living at the decease of my said wife;" and directs that the legacies "be paid within six months after the decease of my said wife."

The testator died in 1869, leaving no lineal descendant. At that time his next of kin was his only brother Joseph, who died in March, 1879, leaving a daughter, Lucy A. Lancaster, one of the defendants; the Rolfes, sons of a deceased daughter; and other grandchildren, being children of a deceased son. All the defendants are Joseph's heirs-at-law. The testator's widow died in October, 1879. At that time the testator's next of kin and heir-at-law was Lucy A. Lancaster.

The will of Joseph gives two of his grandchildren, W. H. Moody

and J. F. Moody, "all the rest and residue of the property of which I may be possessed at the time of my decease."

The plaintiff, having executed his trust and paid all the legacies as directed by the will of Charles Moody, settled his account in the probate court, and there is in his hands a balance of $1,909.33 for the final disposition of which the will does not provide.

*Leach & Stevens*, for W. H. Moody and J. F. Moody. John Kimball, as executor of the will of Charles Moody, holds $1,909.33, which, as admitted by all interested, was not disposed of by the will. Moody died April 5, 1869. His widow, who held the income of the whole during her life, died October 1, 1879. His only brother, and heir-at-law at his decease, Joseph Moody, died testate, March 2, 1879. All claimants are grandchildren of Joseph, except Mrs. Lancaster, who is a daughter.

At the death of Charles Moody, his only brother and heir-at-law, Joseph Moody, took a vested remainder in all estate not disposed of by his will. *Burleigh* v. *Clough*, 52 N. H. 270; *McCall's Appeal*, 56 Penn. St. 363; *Loring* v. *Loring*, 100 Mass. 343. This estate vested in Joseph at the testator's decease. "The rule is, that where an estate is given to a stranger for life, or any other limited interest, then over to his next of kin, those who stand in that relation at the death of the testator will be entitled to take, whether living or not, at the period when the devise over takes effect." 2 Jar. Wills 52. *Pinkham* v. *Blair*, 57 N. H. 241; *Glidden* v. *Blodgett*, 38 N. H. 74. "There can be no question, the tendency of recent decisions is clearly in favor of holding all estates in remainder vested, where that can be done without too great violence to the language used." Red. Wills, part II, *c.* 14, *s.* 30, *p.* 612; *Mortimore* v. *Mortimore*, 8 Law Reporter 348. Only the express declared intent of the testator can prevent the vesting at the testator's decease. No such intent is here manifested. On the contrary, the fact that the testator's will omits to mention the name of his only brother, while mentioning his brother's children as legatees,—and the fact that his brother was in poor circumstances, as may be fairly inferred from the inventory of his estate filed a few years later, showing as assets only $514.50,—raise a strong presumption that the testator either intended his brother should take the remainder of his estate as heir, or intended to make him his residuary legatee, and forgot to have any residuary clause inserted in the will. Mrs. Lancaster, the party who claims that the estate did not vest at the testator's decease, receives a legacy of $200 by the will, from which it is fair to presume he gave her all he intended. The probate records show that the personal estate of Charles Moody was all applied to payment of debts and expenses of administration, except that specifically bequeathed to the widow; that the real estate which came to the hands of the trustee, as shown by his actual sales and the inventory, was of

about $7,000 in value. This real estate, at the death of Charles Moody, not being devised, descended to Joseph Moody, the only next of kin, subject to the widow's rights, as fixed by statute or given by the will, and the payment of $3,700 in legacies. G. L., c. 203, s. 1. The only things necessary to happen before a sale to vest an absolute fee simple in this real estate in Joseph, were the death of the widow, and the payment of $3,700 in legacies. The first event was certain to happen, and the latter could be performed by the heir. It is the present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder. 4 Kent Com. 215.

The cases cited in favor of the estate's vesting in those who were next of kin at the widow's death, are nearly, if not quite, all cases where the remainder was contingent, or the persons to take in remainder were to be ascertained through the medium of a power. *Rich* v. *Waters*, 22 Pick. 563, was overruled in *Abbott* v. *Bradstreet*, 3 Allen 590. See, also, *Dove* v. *Torr*, 128 Mass. 38; 2 Will. Ex. 1008. If beneficiaries take by form of gift, subject to be defeated by the execution of the power, they have a vested interest at the death of the donor. Those living at that time will take, if power not executed to defeat it. Perry Trust, s. 258.

The intervention of a trustee, with power to "expend so much of the principal for Maria A. Moody's support as he may deem necessary," does not in any way affect the nature or vesting of the residuary estate. *Eaton* v. *Straw*, 18 N. H. 332; *Bowditch* v. *Andrew*, 8 Allen 339; *White* v. *Curtis*, 12 Gray 54; *Ayer* v. *Ayer* 128 Mass. 575; 1 Jar. Wills 760; *Burleigh* v. *Clough*, before cited. No fee of any kind ever vested in the trustee. No estate is deemed a fee unless it may continue forever. An estate whose duration is circumscribed by the period of one or more lives in being, is merely a freehold, and not a fee. 4 Kent Com. 3. There must be a possibility that the estate may endure forever to constitute a fee; and in this case there was no possibility that the trustee could have any power over or right to possession of the property after the death of the widow. By the form of the bequest, no estate was given to the trustee; but the will directs "the property to be placed by my executor in the hands of John Kimball, in trust for the use of my said wife during her life." The citations to support a fee in the trustee do not apply. The second, third, and fifth citations apply to trusts that might be perpetual. The last one has no relevancy. 45 Maine is an authority for us. It holds a fee in the trustee, and that during its existence another party held a vested remainder which he could convey by deed. The remaining cases cited on this point hold that the fee and legal estate are in the trustee, when necessary to fulfil the objects of the trust. They are not necessary in this case. The only estate

necessary in the trustee is the right of possession during the life of the widow, with a limited power of disposal. The same powers that were vested in the trustees and widow in this case, and the additional power of disposing of the whole estate for any purpose, were vested in the same person, in *Burleigh* v. *Clough*, 52 N. H. 270, without constituting a fee, or disturbing the vested remainder. How can less powers and rights divided between two persons, as in this case, constitute a fee in one of them ?

Joseph Moody had the power to dispose of this vested remainder by will. All vested estates, even though liable to be defeated by condition subsequent, are transmissible, and by consequence devisable. Red. Wills 390, *s.* 17 ; *Glidden* v. *Blodgett*, 38 N. II. 74 ; *George* v. *Green*, 13 N. H. 527. Joseph did dispose of it, by the residuary clause in his will, to W. H. Moody and J. F. Moody. He gave them " all the rest and residue of the property of which I may be possessed at the time of my decease." The only other bequest was of one card-table to Mrs. Lancaster. The will was made in 1876. His only assets at his death, in 1879, as shown by the inventory in the probate office, were,—household furniture, $13.25 ; a promissory note, $501.25. The balance in the executor's hands, at his first settlement of account, after paying debts, as shown by the probate records, was $31.30. It seems more probable that he intended to dispose of this vested remainder by the will, than that he made his will to dispose of this $31.30. The language is broad enough to convey it. His intent seems to have been to give these parties all he had, and " the courts have for a long time inclined very decidedly against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them ; for the fact of making a will raises a very strong presumption against any expectation or desire, on the part of the testator, of leaving any portion of his estate beyond the operation of his will." Red. Wills, part II, *p.* 442. The bequest in Joseph Moody's will, of " all the rest and residue of the property of which I may be possessed at the time of my decease," should be construed as if it read all the property I may own at my decease. The definition of the verb possess, as given in Webster's Dictionary, is " to own," " to have a just right to," " to have a fair claim upon." The construction of these words is well stated by the court in *Hemingway* v. *Hemingway*, 22 Conn. 472. " Possessed was used to denote ownership, and not merely personal or corporal occupation." Also, in 5 Veasey, Jr., 816, " all I am possessed of." If these words closed the will, they would have passed everything the testator might have at his death.

*Mugridge*, for the Rolfes. As Charles Moody's will failed to make a complete disposition of his estate, the undisposed of interest devolves on the person or persons on whom the law casts that species of property. 2 Jar. Wills 149 ; Gen. St., *c.* 184, *ss.*

1, 6.   If there had been no will, the estate of Charles Moody, subject to the rights of the widow, would at once have become vested in Joseph Moody, who was his heir and next of kin. Part of his estate, however, was disposed of by will. It matters not whether the estate be regarded as real estate, or personal property. It was vested in trustees for the life of his wife. But after her death, and after all was done that was commanded by the will, a portion of the estate remains undisposed of. This is disposed of by the law, and follows the same course that the whole estate would if there had been no will.

Inasmuch as the heir and next of kin are the same, it becomes necessary to consider what kind of estate was created by the will. If as to the surplus not required for the widow's support there was a life estate only, then, on a sale by the trustee, the assets might still be treated as realty on which certain legacies were charged, were that construction necessary. The remainder might be regarded, properly enough, as vested, though subject to a defeat by the proper exercise of the power of sale and use placed in the trustee. In any event there remains a surplus not disposed of by the will, which by the law goes as if the testator had died intestate. Even if the remainder be regarded as contingent, the rule is the same. When the event occurs that makes the property an undisposed of surplus, it is to be divided; but to ascertain the beneficiaries we resort to the statute, and go back to the time of the testator's death. Thus, where an estate was given on condition, with a residuary legatee who died before the condition was violated, it was held that a contingent interest vested in the residuary legatee. "It was a vested right subject to a contingency, which was transmissible to her heirs and representatives, and in them it became vested in possession on the forfeiture of the estate." *Clapp* v. *Stoughton*, 10 Pick. 463. So, too, when there was a vested remainder, arising by the operation of law, after a life estate, the court held that the estate was to be divided according to the law existing when the estates were created, and not when the right of possession passed into the hands of the remainder-men. *Miller* v. *Miller*, 10 Met. 393; 1 Red. Wills 414; *Winslow* v. *Goodwin*, 7 Met. 363. There may be an exception, when by the will the persons to take are to be referred to the time when the estate comes into possession. *Dalton* v. *Savage*, 9 Met. 37.

In construing wills, the time when the beneficiaries are fixed is always referred to the day of the testator's death, unless the testator otherwise orders. It is true that this intention is sometimes found by inference. No such intention, however, can be drawn from a statute. There is, moreover, nothing in this will that expresses such an intent, nor from which such an inference can be drawn. The most that can be said is, that the will is to be construed as if the testator had added a clause giving any remainder to his next of kin. Now if the previous life estate had been

given to his next of kin, it might have followed that he intended his next of kin at the time when the estate fell in.  But, on the other hand, the beneficiary was not connected by blood at all, and therefore the presumption is, that if the clause had been used it would have referred to the time of the death of the testator.  *Pinkham* v. *Blair*, 57 N. H. 241.

In this case there was an uncertainty as to the quantity of estate that would be left for final distribution.  There was none as to the person entitled to whatever fund was forthcoming on the death of the widow of Charles and the payment of the legacies.  Just as by the death of Charles the persons who were to have legacies was fixed by the will, so the person who was to take the remainder was fixed by the statute.  So, also, as by the power placed in the trustee the fund for the payment of those legacies might be exhausted, in just the same way might the surplus be wanting and nothing be left for the residuary legatee.  In both cases the right to receive was vested, in one case in the persons named by the testator, and in the other in the person named by the statute.  In both cases there was an uncertainty, not only as to the amount coming, but as to whether anything would be due and payable when the contingency happened on which the legacies were to be paid.  *Grout* v. *Townsend*, 2 Denio 338; *Doe* v. *Provoost*, 4 Johns. 61.  The case of *Wood* v. *Keyes*, 8 Paige Ch. 365, is directly in point on this branch of the case.  There, as here, the testator created a life estate, and evidently supposed he had disposed of the remainder.  In consequence of a contingency he had not foreseen, there was a portion of his estate undisposed of after the termination of the life estate.  The court held that it vested in the heirs as they were at the time of the death of the testator, in accordance with the statute provisions as to descent.

Even if Joseph Moody could have disposed of this interest by will, he could have done so only by the use of apt words.  While he stood in the place of a residuary legatee under Charles Moody's will, he not only had not the residuum of the estate in his possession, but at the time when his will took effect he had no right of possession, no right of action even, and it was still uncertain whether he ever would have anything in consequence thereof.  His will disposes " of the property of which " he might " be possessed at the time of " his " decease."  As he was not possessed of the remainder of Charles Moody's estate, the will is ineffectual to convey it.  It is like the case of after acquired property, when the testator bequeaths " all the real estate which I now own."  If he might have included this fund by adding " or to which I may be, entitled as next of kin to my brother Charles or otherwise," the fact remains that he did not so say.  *Wilson* v. *Major*, 11 Ves., Jr., 205; *Berry* v. *Usher*, 11 Ves., Jr., 87; *Church* v. *Mundy*, 12 Ves., Jr., 426.

*J. N. Marshall* (of Massachusetts) and *Chase & Streeter,* for Lucy A. Lancaster. A fee in the real estate, and the legal title to the personal estate, given in trust by Charles Moody's will, vested in the trustee thereunder. 1 Red. Wills 500, s. 22 ; *Cleveland* v. *Hallett,* 6 Cush. 407 ; *Troy* v. *Haskell,* 33 N. H. 533 ; *Pearce* v. *Savage,* 45 Me. 90 ; *Oates* v. *Cooke,* 3 Bur. 1686 ; *Williams* v. *Pres. So.,* 1 Ohio St. 497 ; Perry Trusts, *ss.* 313–315 ; *Harris* v. *Knapp,* 21 Pick. 416. It became absolutely necessary that a fee in Charles Moody's real estate should vest in his trustee, in order to enable him to fulfil the objects of the trust. He had nothing but real estate with which to do it. He was to use more than the income. How could he use any of the principal unless he had the fee ? If he had not been expressly authorized to sell, the law would have given him this power by implication. " When a trust is declared which cannot be fully executed but by the trustees taking an inheritance, the court will enlarge or extend their estate into a fee simple to enable them to carry out the intention of the donor." No purchaser would be safe unless the trustee had the fee. If a trustee is authorized to sell, as here, he must have the fee : otherwise he could not sell. Perry Trusts 293 ; *Doe* v. *Field,* 2 B. & Ad. 564 ; *Sears* v. *Russell,* 8 Gray 86. If the trustee, therefore, during the life of the widow, was vested with the whole estate, as he clearly was, how can it be maintained, or be possible, that any heir of the testator could have a vested interest in the same estate, or in any part thereof, during the same time ?

The fact that the estate given in trust was not exhausted, is immaterial, because the legal title to the whole estate vested in the trustee, and the trust attached upon the same. Perry Trusts, s. 316 ; *Ellcock* v. *Mapp,* 3 Ho. Lords Cas. 492 ; 16 Eng. L. & Eq. 27 ; Red. Wills 602, *s.* 9 ; *Nourse* v. *Finch,* 1 Ves., Jr., 344 ; 1 Atk. 469. The executor and trustee holds the surplus as a resulting trust for the benefit of the testator's next of kin. 2 Sto. Eq. Jur., *s.* 1208 ; *Hays* v. *Jackson,* 6 Mass. 152, 153 ; *Easterbrooks* v. *Tillinghast,* 5 Gray 17 ; *Mence* v. *Mence,* 18 Ves., Jr., 348 ; *Ellcock* v. *Mapp, supra.* The next of kin of the testator, for whose benefit the trust resulted, are those who were living at the time the trust resulted, or when the widow deceased ; and Lucy A. Lancaster, being such next of kin, is entitled to the surplus. Perry Trusts, ss. 258, 311, *p.* 290 ; *Briden* v. *Hewlett,* 2 Myl. & K. 90 ; *Butler* v. *Bushnell,* 3 Myl. & K. 232 ; Red. Wills, *c.* 8, *s.* 21 ; *Beck* v. *Burn,* 7 Beav. 492 ; *Cruwys* v. *Colman,* 9 Ves., Jr., 319 ; *Leake* v. *Robinson,* 2 Mer. 363, 387 ; *Rich* v. *Waters,* 22 Pick. 563 ; *Olney* v. *Hull,* 21 Pick. 311 ; *Hill* v. *Rockingham Bank,* 45 N. H. 270, 273 ; *Pinkham* v. *Blair,* 57 N. H. 226 ; 1 Rob. Wills (3d ed.) 432.

The rule cited and relied upon, " that where an estate is given to a stranger for life, or any other limited interest, then over to his next of kin, those who stand in that relation at the death of

the testator will be entitled to take, whether living or not at the period when the devise over takes effect," has no application to the case at bar. The gift of the estate for life, or other limited interest, does not exhaust the whole estate; there remains a certain, definite, present interest, the enjoyment of which is simply and only postponed; and upon the decease of the testator this interest must vest in the parties entitled thereto, and the estate will thus be upheld. But, in the case at bar, the whole estate, upon the decease of the testator, vested in the trustee during the life of the widow; and, by the terms of the will, the testator disposes of the property remaining in the hands of the trustee at her decease, and whether there will be any undisposed surplus or not can only be known after the widow's death and payment of the legacies. Until then there was not, in law or in fact, any undisposed surplus. It is contrary to reason, and a confusion of ideas, to say that there was an undisposed surplus in the hands of the trustee whilst the widow was living; and when the principal was being used for her support, with authority to expend the whole estate for her benefit; and when it could not possibly be known that there would be any surplus, or even enough to support her during her life, because it could not be known how long she would live, nor how much would be required for her maintenance. At most there was a mere or naked possibility.

The trustee had expended a considerable portion of the principal fund in support of the widow, and, by reference to the probate records in Charles Moody's estate, it will be seen that if the widow had lived a few years longer the whole trust estate would have been exhausted; so that there would not only have been no undisposed surplus, but nothing for the legatees. Hence, whether there would be enough property to support the widow during her life depended upon how long she might live; and whether there would be anything for the legatees depended not only upon how long the widow might live, but how much would be required for her support; and whether there would be any undisposed surplus depended not only upon the length of the widow's life and the amount her trustee might use for her comfort, but also whether there would be in the hands of the trustee, upon her decease, any more than enough to pay the legacies. Thus it will be seen that whether there would be any undisposed surplus or not rested upon a double contingency, as a possibility upon a possibility, and there could not properly be said to exist any present or vesting interest in such surplus. 1 Red. Wills 388 and *n.*

It appears by the will of Charles Moody that it was his intention to postpone the vesting of the property, if any, which might remain upon the death of his wife, until her decease. The estate was vested in the trustee during her life, with authority to use the whole of the same, if need be, for her support. The legacies are given upon condition that the legatee survive his wife. The clause

in his will, "After the decease of my said wife, I give and bequeath the property then remaining in the hands of my said trustee, to be paid over by him," etc., clearly shows that such was his intention.

The death of the widow did not divest the trustee of his legal title to the property then remaining. He had a further duty or trust to discharge,—the payment of the legacies; and when these were paid the legal title to the undisposed surplus still remained in the trustee. *Sears* v. *Russell, supra.* When the purposes of the original trust had been accomplished, and there was then found an undisposed surplus in the hands of the trustee, the law, at this precise juncture, raised a trust thereon for the benefit of the testator's next of kin. No interest of any kind in a surplus could be raised for or vest in any one until there was a surplus, and there could not possibly be any surplus until after the death of the widow. Not until then could any interest vest, and the persons entitled are to be ascertained as of the time when the interest vested. 2 Red. Wills 414. A devise or bequest of property to the testator's heirs-at-law, where there are intervening estates, and the remainder is contingent, will be construed as having reference to those who shall sustain the relation of heirs at the time the estate vests in possession. 1 Red. Wills 392. So that if Charles Moody had provided in his will, after the legacies, " that, if there is any surplus, I give and bequeath the same to my next of kin," it would have gone to his next of kin living at or after his widow's decease. Or, if he had provided in his will, after the legacies, that if there should be any surplus, the same should, by his trustee, be divided and paid over to his next of kin,—and the statute says no more,—then, according to the weight of authority, it would be among and to the next of kin living at his widow's decease.

If, however, the trust resulted for the benefit of the testator's next of kin who were living at his decease, Joseph Moody, as such next of kin, could not dispose of this surplus by will. He had no present interest in it. During his life the absolute property in all the estate given in trust, and subject thereto, with full power of disposal, was vested in the trustee, and there was therefore no time during the life of Joseph Moody when he had any transmissible or devisable interest therein. If he had any right to the same during his life, it was not a right as property, but a mere or naked possibility, which is never devisable. *Deas* v. *Horry,* 2 Hill Ch. (S. C.) 244, 247, 248; *King* v. *Crawford,* 17 Serg. & Raw. 118; *Vawdry* v. *Geddes,* 1 Russ. & M. 203; *Stead* v. *Platt,* 18 Beav. 50; *Hall* v. *Nute,* 38 N. H. 422; *Batsford* v. *Kebbell,* 3 Ves., J., 363.

But if Joseph Moody had at the time of his decease any right or interest in the trust estate which he might have disposed of by will, he most evidently did not do so. It was not property in his possession, over which he had actual dominion, and which was subject to his immediate control and disposition. He only undertakes in his will to bequeath property in his actual possession or imme-

diate control ; that which he was accustomed to treat and call his own.    This is the natural and obvious meaning of the operative words in his will, their ordinary and popular signification ; and he clearly uses them in that sense, and his intention, gathered from the whole will, must govern in its construction. *Blake* v. *Bunbury,* 1 Ves., Jr., 194, *n.* 4 ; 1 Red. Wills, *p.* 432, *pl.* 16, 17 ; *p.* 436, *pl.* 24 ; *p.* 438, *pl.* 2, *et seq.*

DOE, C. J.    The interpretation of a will is the ascertainment of the testator's intention ; and the question of intention is ordinarily determined as a question of fact by the natural weight of competent evidence.    *Rice* v. *Society,* 56 N. H. 191, 197, 198, 203 ; *Brown* v. *Bartlett,* 58 N. H. 511.    In this case there is no statute that defeats the testator's intention ; and a legal rule, having that effect, cannot be invented by the court, and cannot be enforced unless shown to have been duly enacted by a body authorized to make law.    There is a balance in the trustee's hands, which has been held and used, according to the order of the will, during the life of the testator's widow ; but the will does not direct how it shall be disposed of after her death.    We think the will proves the fact that the testator intended no legal or equitable title of this balance should vest in any other person than the trustee and widow during her life.    The balance goes to Lucy A. Lancaster, who was the testator's next of kin at the decease of the widow.

*Decree accordingly.*

FOSTER, J., did not sit : the others concurred.